NEW YORK LIFE INSURANCE CO. *v.* BUCHBERG.

1. INSURANCE—EVIDENCE—ADMISSIBILITY OF APPLICATION FOR RE-INSTATEMENT—STATUTES.

In suit by insurance company for cancellation of reinstatement of insurance policy on ground that insured secured same by false representations, application for reinstatement was admissible in evidence although not indorsed upon or attached to policy, since provision therefor in statute (Comp. Laws Supp. 1922, § 9100 [147]), contemplates only written application made incident to original issuing of policy.

2. SAME—REINSTATEMENT OF POLICY NOT NEW CONTRACT.

Reinstatement of insurance policy is not new contract of insurance, nor is it issuance of policy of insurance, but rather it is contract by virtue of which policy already issued, under the conditions prescribed therein, is revived or restored after its lapse.

3. SAME—STATUTORY PROVISION IN DEROGATION OF COMMON LAW NOT EXTENDED BY IMPLICATION.

Statutory provision limiting proof of fraud incident to original application for insurance to statements contained in copy attached to policy is in derogation of common-law right to allege and prove material fraud, and should not be extended by implication beyond plain meaning of statutory language.

4. SAME—INSURER DEFRAUDED IN REINSTATEMENT OF POLICY ENTITLED TO CANCELLATION—CANCELLATION OF INSTRUMENTS.

In suit by insurance company for cancellation of reinstatement of insurance policy where it appears from record that insurer relied on misrepresentations made by insured in his application for reinstatement and was thereby defrauded, it was entitled to cancellation.

Appeal from Wayne; McPeek (Russell R.), J., presiding. Submitted October 11, 1929. (Docket No. 76, Calendar No. 34,481.) Decided January 24, 1930.

Criterion of health as condition on reinstatement of insurance policy, see annotation in 40 A. L. R. 667.

Bill by New York Life Insurance Company, a New York corporation, against Max Buchberg and others, for cancellation of reinstatement of an insurance policy. From a decree dismissing plaintiff's bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Thomas A. E. Weadock,* for plaintiff.

*I. M. Smullin,* for defendants.

*Miller, Canfield, Paddock & Stone, amicus curiæ.*

NORTH, J. In 1919 the defendant took out a $1,500 20-payment life policy in plaintiff company. Plaintiff claims there was default in payment of a premium which fell due October 3, 1924, that the 30 days of grace passed, that the payment was not made until November 5, 1924, and that the receipt of payment was then conditional upon the reinstatement of the insured; and further, that on December 3, 1924, defendant filed an application for reinstatement and represented therein that he was then, to the best of his knowledge and belief, in good health; and that within the past 12 months he had not had any illness, consulted with or been treated by any physician. The plaintiff relied upon these representations and reinstated the insured.

The policy contained a disability provision; and in October, 1926, the insured, who was then afflicted with Bright's disease, made application for the disability benefit. Incident to this disability claim Dr. Rivkin in behalf of the insured made a written representation to plaintiff wherein it was stated that the doctor had treated the insured for Bright's disease in August, 1924. This being within the 12 months next preceding defendant's application for reinstatement, the insurance company tendered the repayment of

the amounts the insured had paid to it incident to reinstatement and as subsequent premiums together with interest thereon. This bill of complaint was then filed to secure cancellation of the reinstatement on the ground that it was secured by false representations of the insured that at the time of his application he was in good health and that within 12 months prior thereto he had not consulted or been treated by a physician. Cancellation would relieve plaintiff of its obligation incident to the disability clause in the policy, and automatically convert the policy into one of continued or extended life insurance for a period of years fixed by the terms of the policy.

Defendant denied in his answer that he at any time defaulted in the payment of his premium, and denied that he had made application for reinstatement or that he had made the alleged misrepresentations incident thereto. It was and is defendant's claim that his brother paid on October 30, 1924, the premium which fell due October 3, 1924, this being within the 30 days of grace. The insurance company's receipt for payment of this premium dated October 3, 1924, was produced by the defendant; but this was explained by the company's claim that this receipt purporting to be for the premium due October 3, 1924, and bearing that date, was postdated and delivered after defendant's reinstatement. Dr. Rivkin, as plaintiff's witness, testified he was mistaken about his having treated the defendant in 1924; that instead it was in 1925. Plaintiff was denied the relief sought and it has appealed.

The opinion of the trial court in part is as follows:

"After careful consideration of the facts, and such authorities as have been presented, I have reached the conclusion that the case turns upon the question

of admissibility of the application for reinstatement, which was not attached to nor indorsed on the policy, and is, therefore, claimed by defendant to have been inadmissible. In other words, I think that the plaintiff company has failed to show by competent evidence that the defendant did not pay in time the premium upon his policy if the admissions in the application are excluded. * * * This leaves the plaintiff dependent upon the admission of default contained in the application for reinstatement, and indicates the importance of the question first suggested herein, viz.: Was this document admissible in evidence? The question was reserved by the court, and the finding will rest upon its determination.

"The objection of the defendant rests on the following provision of the insurance laws of Michigan, viz.: Act No. 256, Pub. Acts 1917, pt. 3, chap. 2, § 3 (Comp. Laws Supp. 1922, § 9100 [147]):

" 'Section 1. No policy of life insurance shall be issued in this State, unless the same shall contain the following provisions: * * *

" 'Fourth, A provision that all statements made by the insured, shall, in the absence of fraud, be deemed representations and not warranties, and that no such statement shall avoid the policy unless it is contained in a written application and a copy of such application shall be endorsed upon or attached to the policy when issued.' "

The trial judge held that because of the above-quoted statutory provisions, he could not consider the insured's application for reinstatement, since a copy thereof was not "endorsed upon or attached to the policy." In this we think he was in error. By its terms the statute plainly contemplates only the written application made incident to the original issuing of the policy. The statute requires such "written application" to be "attached to the policy *when issued*." Clearly it was not intended by this statute

to require the insurance company to attach to the policy "when issued" representations made incident to an application for the reinstatement of lapsed insurance. In almost every instance the policy for such insurance at the time of reinstatement is not in the possession of the insurer but instead is under the control of the insured. The reinstatement of a policy is not a new contract of insurance, nor is it the issuance of a policy of insurance; but rather it is a contract by virtue of which the policy already issued, under the conditions prescribed therein, is revived or restored after its lapse. *Reidy* v. *John Hancock Life Ins. Co.*, 245 Mass. 373 (139 N. E. 538), and *Wastun* v. *Lincoln Natl. Life Ins. Co.*, 12 Fed. (2d) 422. Provision relative to reinstatement of a lapsed policy is found in a subsequent paragraph of Act No. 256, Pub. Acts 1917, pt. 3, chap. 2, § 3 (Comp. Laws Supp. 1922, § 9100 [147]). This paragraph provides that no policy of life insurance shall issue in this State unless the same shall contain the following provision:

"*Tenth,* A provision that if, in event of default in premium payments, the value of the policy shall be applied to the purchase of other insurance, and if such insurance shall be in force and the original policy shall not have been surrendered to the company and canceled, the policy may be reinstated within three years from such default, upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest."

If as is contended by the defendant, the statute contemplated that the representations made as to the insurability of the one seeking reinstatement should be attached to the policy, it would seem that such a provision would have been embodied in the last-quoted provision of the statute.

Appellant's contention that the statute does not require a copy of the application for reinstatement to be indorsed upon or attached to the policy is sustained by the holding in *New York Life Ins. Co.* v. *Rosen* (App. Div.), 236 N. Y. Supp. 659; *Holden* v. *Metropolitan Life Ins. Co.*, 188 Mass. 212 (74 N. E. 337); *Linder* v. *Metropolitan Life Ins. Co.*, 148 Tenn. 236 (255 S. W. 43); *New York Life Ins. Co.* v. *Feicht*, 29 Fed. (2d) 318, and *Mutual Life Ins. Co.* v. *Allen*, 166 Ala. 159 (51 South. 877). Counsel for appellee has cited *Mutual Life Ins. Co. of N. Y.* v. *Lovejoy*, 201 Ala. 337 (78 South. 299, L. R. A. 1918 D, 860, 203 Ala. 452, 83 South. 591), claiming it sustains a contrary holding; but a careful reading of the two decisions discloses that the Alabama court has made a plain distinction between these two cases. In the *Allen Case* it is said:

"We therefore hold that under section 4579 any contract or agreement relating to same is not binding on the insured, unless expressed in the policy. But misrepresentations in the application or negotiation for insurance or proof of loss thereunder, and which are not made a part of the contract of insurance, or of an agreement relating to same, are binding on the insured, although not expressed in the policy contract, provided, of course, it is made with the actual intent to deceive, or the risk is thereby increased."

A contrary holding will be found in *Metropolitan Life Ins. Co.* v. *Burch*, 39 App. Cas. (D. C.) 397; *Prudential Ins. Co.* v. *Gilligan*, 28 Ohio Cir. Ct. Rep. 609; *Goodwin* v. *Provident Life Assur. Soc.*, 97 Iowa, 226 (66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411), and *Missouri State Life Ins. Co.* v. *Jensen* (Okla.), 281 Pac. 561.

It should be noted that decision in the *Goodwin Case* is based on the Iowa statute, which specifically

provides that all insurance companies shall, "upon the issue *or renewal* of any policy, attach to such policy or indorse thereon, a true copy of any application or representations of the assured, *which * * * may, in any manner, affect the validity of such policy.*" McClain's Code, § 1733. The Iowa court refers to the foregoing provision as being "about as broad as language can make it." It obviously is much broader than the Michigan statute. The *Jensen Case* might well have been based solely on the Oklahoma statute, which provides:

"That every policy which contains a reference to the application of the insured, either as a part of the policy *or as having any bearing thereon,* must have attached thereto a correct copy of the application." C. O. S. 1921, § 6728.

The *Gilligan Case* is a decision from a trial court and not of a court of last resort.

We are satisfied that a proper construction of the Michigan statute does not require a copy of the representations made incident to an application for reinstatement of lapsed insurance to be attached to the policy as a condition precedent to its admissibility in evidence in a subsequent proceeding to secure cancellation of the reinstatement of such policy on the ground of fraudulent representations. If in the judgment of the legislature a copy of the application for reinstatement should be attached to the policy, it can easily so provide by proper enactment; but this court should not read such a provision into the present statute, which is silent on the subject. The statutory provision limiting proof of fraud incident to the original application for insurance to the statements contained in the copy attached to the policy is in derogation of common law, which always permitted the avoidance of a contract procured by means

of fraud. Any statutory provision which deprives one of the right to allege and to prove a material fraud or which places any condition upon a litigant's right to rely upon fraud as a defense should not be extended by implication beyond the plain meaning of the statutory language.

With the application for reinstatement in evidence, it conclusively appears from the record that the insured defaulted in making payment of the premium due October 3, 1924, and that his policy lapsed.

The remaining issue is whether the insured by misrepresentation perpetrated a fraud upon plaintiff in securing the reinstatement of his policy. The proof on this phase of the case is not as decisive as might be desired. We will not review it in detail, but will note certain circumstances which bear upon our conclusion that the plaintiff's contention that it was thus defrauded should be sustained. The record conclusively disclosed that both the insured and his brother Louis Buchberg are in error in their testimony wherein they attempt to deny that the October, 1924, premium was paid after the period of grace had expired; and their good faith in so testifying may well be questioned. Especially is this true of the insured's allegation in his answer wherein he denies that he ever made a petition for reinstatement. The original petition now in the court file bears his signature, and its genuineness is self-evident when compared with his other signatures on the original application for insurance. Dr. Rivkin's testimony wherein he attempts to deny his statements made in the application for disability benefits is evasive and of little or no probative force. We are satisfied that the doctor's statement made in behalf of the insured and the insured's own statements in his claim for disability benefits are true.

This claim was made in October, 1926, and it there appears (contrary to the representations in his petition for reinstatement made December 3, 1924) his disabling illness began about three years prior to the date of his claim; that Dr. Rivkin first visited him incident to such disability August 21, 1924; that insured was suffering from chronic Bright's disease; that he was wholly disabled thereby; and that because thereof he had not engaged in any occupation whatsoever for "about two years" prior to filing his claim of disability. The foregoing representations, which for the most part are found in the insured's application for benefits as well as in the doctor's statement, are in conflict in so many particulars with the insured's petition for reinstatement that it is not possible to explain them on the theory of an inadvertent misstatement of a date, as both the insured and Dr. Rivkin would have us do. There was deliberate falsifying either in the petition for reinstatement or in the claim made for disability benefits. From the record as a whole we conclude that the insured had been attended by a physician within 12 months next preceding his application for reinstatement, and that he was not in good health at that time. The insurance company in reinstating the policy relied upon the misrepresentations made and was thereby defrauded.

The decree of the lower court must be reversed, and a decree entered here canceling the reinstatement of the policy involved. The appellant will have costs of both courts.

WIEST, C. J., and BUTZEL, CLARK, POTTER, SHARPE, and FEAD, JJ., concurred. McDONALD, J., took no part in this decision.