MARIE MOHAR *v.* CONTINENTAL LIFE INSURANCE
COMPANY

(No. 7907)

Submitted April 24, 1934.   Decided May 8, 1934.

*Sanders & Crockett,* for plaintiff in error.
*McGinnis, Ashworth & Mann,* for defendant in error.

HATCHER, JUDGE:

Plaintiff brought this action as beneficiary of a life
insurance policy, issued by  the  defendant  insurance
company, upon the life of Louis Mohar, plaintiff's de-
ceased husband.   Both parties introduced evidence, and
then the defendant demurred thereto. The jury, under
the court's instruction, returned a conditional verdict in
plaintiff's favor. The court found the law to be with the
plaintiff and entered judgment for her. Defendant prose-
cutes error here.

The policy, dated August 17, 1931, provided that the
premiums should be paid quarter-annually, in advance;
that if any premium was not paid when due the policy
lapsed; and that a lapsed policy might be reinstated up-
on evidence of insurability satisfactory to the company
and the payment of all overdue premiums with interest.
The insured did not pay the quarterly premiums of May
17, 1932, and August 17, 1932, respectively, when due.
Receipts for the payment of these premiums, dated Oc-

tober 3, 1932, were introduced in evidence. The payments were made to defendant's local agent, F. J. Wheby, who forwarded them to defendant's district manager. Counsel for plaintiff admitted on the record that the payments were received by the latter on September 17, 1932—the date claimed by defendant. Wheby had authority to collect overdue premiums and to have health certificates executed and sent to defendant's home office for approval or disapproval. With the payments of September 17th, Wheby mailed to defendant's district manager an undated health certificate which he testified the insured signed when the premiums were collected. The certificate represented that the insured was then in good health and had not been affected by sickness since the policy was issued. Another health certificate was introduced by defendant, dated September 23, 1932, purporting to be signed by the insured. Wheby testified that he received this later certificate from defendant's district office with the request that he obtain thereto the signature of the insured; and that the insured either signed it or authorized him (Wheby) to sign it. Plaintiff proved that the signature to the later certificate was not that of the insured, but offered no evidence opposing the genuineness of the undated certificate or the testimony of Wheby concerning it. The statements in both certificates are identical, except that the dated certificate contains this additional declaration: "Absolutely in good health." Plaintiff introduced evidence tending to show that Wheby did not see the insured on September 23, 1932.

Defendant's district manager testified that he did not open his mail personally, and the undated health certificate in the mail of September 17th escaped his atter tion at the time, hence his request of Wheby to secure a health certificate from the insured; that he received in reply the one dated September 23, 1932; and that having no authority to reinstate lapsed policies himself, he mailed that one to the home office. Defendant's secretary and treasurer testified that the policy was reinstated at the home office upon the certificate of September 23rd,

and that this would not have been done without a certificate of that character.

Defendant proved without contradiction that the insured suffered with an abscessed lung—a "very serious" malady—for some two years before his death; that he received hospital treatment for the abscess in the fall of 1932 on September 3-8, 16 and 23, and October 7-11, 15, and 16-23, on which last day he died.

The defendant offered to return to plaintiff the premiums of May 17th and August 17th, both before and during the litigation. The tenders were refused.

Counsel for plaintiff do not protest the lapsing of the policy upon the non-payment of the premium of May 17, 1932, when due. They do not defend the representations made by the insured in the undated health certificate of September 17th. They virtually ignore that certificate. They take this position: that the certificate of September 23rd was forged by Wheby without the knowledge of the insured; that as Wheby was authorized to procure such certificates, his conduct in relation thereto is that of the defendant; and that the defendant reinstated the policy with constructive knowledge of Wheby's forgery, the legal effect of which was to waive the production of a health certificate. It is essentially fair that if defendant be charged with Wheby's knowledge of the invalidity of the certificate of September 23rd, defendant should be credited with Wheby's knowledge of the validity of the undated certificate of September 17th. Any consideration whatever of this case leads to the one conclusion, that the revival of the forfeited policy was induced by false representations of the health of the insured, primarily made (September 17th) by the insured himself. Such representations amount to a fraud and constitute a valid defense to this action. *Reidy* v. *Ins. Co.*, 245 Mass. 373, 139 N.E. 538; Vance on Insurance, sec. 99; 3 Couch Cyc. of Ins. Law, sec. 702; 4 Cooley's Briefs on Ins. (2nd Ed.), p. 3791.

The judgment of the circuit court is therefore reversed and judgment entered here for the defendant.

*Reversed and rendered.*