# DECISIONS

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS

---

ANNA BASSETT CLARK *vs.* THE MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK.

Essex. November 18, 1924. — January 27, 1925.

Present: RUGG, C.J., PIERCE, CARROLL, & WAIT, JJ.

*Insurance*, Life: reinstatement. *Evidence*, Presumptions and burden of
proof.

Where, within two months after the lapsing for nonpayment of premium
of a policy of life insurance which had been in force less than two years,
the insured makes a "personal application" in writing for reinstatement
of the policy and in the application agrees "on behalf of myself and
of every person who has or shall have any interest in said policy that"
statements and answers therein made were offered to the insurance
company "as an inducement for it to waive the default which has oc-
curred in the payment of the above mentioned premium or premiums
and loan interest and to reinstate said policy, and further that the
same are material to the risk which the Company is asked to assume by
reinstating said policy," and the insured then dies in less than a year
after the reinstatement of the policy, in an action by the beneficiary
upon the policy the burden was upon the plaintiff of establishing that
at the time of the application for reinstatement the insured had had
no "illnesses, diseases, [or] injuries" since the date of the policy, and
had not been treated or prescribed for, and had not consulted a
physician since the date of the policy.

At the trial of the action above described, the plaintiff, the insured's
widow, testified that she never knew her husband had consulted a
doctor "for any physical ailment up to the time of his death, except
when he hurt his arm in the store lifting a barrel . . .; that this

accident happened after the policy of insurance was issued [probably meaning after its reinstatement]; . . . that he had gone to see" ·a certain physician "on account of his arm"; that the physician had called at her home about seven months before the policy had lapsed and she told him that her husband "had a cold, and he told him to take care of it, that was all." The plaintiff's proof of claim filed with the company stated as the immediate cause of death "heart failure," and that he was attended by three physicians including the physician named by the plaintiff in her testimony during the two years preceding his death. Interrogatories of the plaintiff to the defendant and answers thereto introduced in evidence by the plaintiff, as well as uncontradicted evidence of the defendant, tended to show consultations of the insured with physicians relating to a disease of the heart within eleven months preceding the date of the agreement as to his reinstatement. *Held*, that

(1) G. L. c. 175, § 186, was not applicable to representations made in the application for reinstatement;

(2) The parties were bound by the agreement in the application that all the answers were material to the risk, and were true;

(3) There was no evidence warranting a finding that the plaintiff had sustained the burden of proving that the statements by the insured in the application for reinstatement were true;

(4) The insured having failed to comply with the conditions precedent mentioned in the application, the policy was not revived;

(5) Judgment should be entered for the defendant.

CONTRACT, upon a policy of life insurance. Writ dated November 9, 1921.

In the Superior Court, the action was tried before *Macleod*, J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied. There was a verdict for the plaintiff in the sum of $1,090. The defendant alleged exceptions.

*G. Hoague,* for the defendant.

*R. L. Sisk,* for the plaintiff.

CARROLL, J. In September, 1919, the defendant issued an insurance policy on the life of George W. Bassett, payable in the event of his death to his wife, the plaintiff in the present action. The policy lapsed because of default in payment of the premium due September 22, 1920, and a "personal application" for reinstatement without medical examination was made by the insured on November 6, 1920. This application provided, "I agree on behalf of myself and of every

person who has or shall have any interest in said policy that the foregoing statements and answers are true and are offered to The Mutual Life Insurance Company of New York as an inducement for it to waive the default which has occurred in the payment of the above mentioned premium or premiums and loan interest and to reinstate said policy, and further that the same are material to the risk which the Company is asked to assume by reinstating said policy." In reply to the question, " What illnesses, diseases, injuries or surgical operations have you had during the past five years or since the date of said policy, if less than five years in force? " the insured answered, " None." In answer to the question, " State every physician or practitioner who has prescribed for or treated you, or whom you have consulted during the past five years or since the date of said policy, if less than five years in force," he replied, " None."

The plaintiff put in evidence the policy and proof of loss. She testified that the insured died in September, 1921; that she never knew he had consulted a doctor " for any physical ailment up to the time of his death, except when he hurt his arm in the store lifting a barrel . . . that this accident happened after the policy of insurance was issued; . . . that he had gone to see a physician, Dr. Hopkins, on account of his arm, after lifting a barrel of sugar, but she could not tell just when it was; she knew he went but didn't know what for." She further testified that Dr. Hopkins called at her home in February, 1920, and she " told the doctor [that Bassett] . . . had a cold, and he told him to take care of it, that was all "; that her husband visited Dr. Hopkins at his office, for his arm. Another witness testified that the accident to Bassett's arm happened in February or March, about eight or nine months before his death. The plaintiff signed the proofs of loss. To the question therein, " When did the health of deceased first begin to be affected? " she answered, " June 1921 "; also that the immediate cause of his death was "Heart Failure"; and that Dr. O'Leary of Wakefield, Dr. Hopkins and Dr. Worthing, of Chatham, attended him or prescribed for him during the two years preceding his death. On cross-examination she testified

that she did not remember whether Bassett " went to Dr. Hopkins' office more than once, but she thinks he did."

In answer to interrogatories to the defendant, which the plaintiff put in evidence, the defendant stated that the insured had acute bronchitis February 12, 1920, valvular heart disease with mitral regurgitation, dilation of the heart, and systolic murmurs, for an unknown period prior to February 20, 1920, until the date of his death; that he had been treated by Dr. Hopkins, "possibly by Dr. T. A. O'Leary, . . . now deceased, and by Dr. O'Brien. . . . I am informed that these doctors treated said Bassett for his heart trouble." Dr. Hopkins, called by the defendant, testified that he attended Bassett professionally February 9, 1920, at his (Bassett's) home; he was then suffering from a cold; that he saw him again February 12, when he had acute bronchitis; that on February 20 he came to the doctor's office, when an examination was made and it was found that the insured " showed marked mitral regurgitation, with a systolic murmur "; " that the mitral valve was leaking." He told Dr. Hopkins that he had seen a doctor in Wakefield and in Roxbury; that he had been examined at the Homeopathic Hospital in Boston and a blood count was taken; " that Dr. Caldwell advised him to have a complete physical examination as soon as he came home." At the close of the evidence the defendant moved that the court direct a verdict for the defendant, which motion was denied and defendant excepted.

There was no question that the policy had lapsed. It was necessary, therefore, for the plaintiff to prove the truth of the facts stated in the " Application for Reinstating Policy Without Medical Examination." The insured agreed as a condition precedent to his reinstatement, that every one of his answers was true, that these answers were material to the risk. The burden of proof was upon the plaintiff to establish that the insured had had no "illnesses, diseases, [or] injuries" since the date of the policy, and had not been treated or prescribed for, or had not consulted a physician since the date of the policy. The plaintiff's own testimony showed that Bassett had gone to Dr. Hopkins' office on

account of an injury to his arm, although she stated this was after the date of the policy, probably meaning by this statement the date of its renewal; but she testified that Dr. Hopkins was at her home in February, 1920; that her husband was suffering from a cold, and that Dr. Hopkins treated him, and the proofs of death which she introduced as a part of her case, showed that the insured died of heart failure, and had been prescribed for by Dr. Hopkins and two other physicians during the two years preceding his death.

G. L. c. 175, § 186, providing in substance that no misrepresentation or warranty made in the negotiation of a policy of insurance would be deemed material, or defeat the policy, unless the misrepresentation or warranty was made with intent to deceive, or unless the matter misrepresented or made a warranty, increased the risk of loss, is not applicable to the facts in this case: that statute does not apply to an application for reinstatement, it has reference only to the representations made when the policy is issued.

In an application for reinstatement such as the one before us the parties are bound by the terms of the contract. They agreed that all the answers were material to the risk, and were true. If the insured consulted a physician, or was treated by one, or had been prescribed for by a physician since the date of the policy and before the date of the application, or if the deceased had an illness, disease or injury of any kind during that time, his answers were not true. By the plaintiff's own evidence, by which she was bound, it appeared that the insured had consulted a physician for medical treatment in February, 1920, and he then had an " illness " of some kind. If he had a cold at this time and a physician was consulted, or if he was treated by the physician, that fact was material. In addition to this, the testimony of Dr. Hopkins was not contradicted in its essential particulars: he testified that the insured was attended by him and found to be suffering from heart trouble in February, 1920, before the application for reinstatement was signed. *Holden* v. *Metropolitan Life Ins. Co.* 188 Mass. 212.

The evidence did not warrant a finding that the statements made by the insured in the request for reinstatement

were true. The burden resting on the plaintiff was not sustained. There being no evidence warranting a finding that the insured had complied with the conditions precedent mentioned in the application, a finding that the policy was revived was not warranted and the plaintiff cannot recover. *Rainger* v. *Boston Mutual Life Association*, 167 Mass. 109. *Fondi* v. *Boston Mutual Life Ins. Co.* 224 Mass. 6, 7. *Reidy* v. *John Hancock Mutual Life Ins. Co.* 245 Mass. 373.

The motion for a directed verdict should have been allowed; and under G. L. c. 231, § 122, judgment is to be entered for the defendant.

*So ordered.*